## Case No. 13,160.

### SOHIER v. WILLIAMS.

[2 Curt. 195.] [1]

Circuit Court, D. Rhode Island. Nov., 1854.

SPECIFIC PERFORMANCE — DOUBTFUL TITLE—INTEREST ON PURCHASE PRICE.

If the vendee refused to receive and pay for a title, which the court decrees him to take, and the vendor tendered a conveyance, on the day

[1] [Reported by Hon. B. R. Curtis, Circuit Justice.].

fixed by the contract of sale for the payment of the price and the delivery of the deed, and there were no rents and profits, the vendee must pay interest, though there was a doubtful point of law involved in the title, which it was prudent to have settled, and the vendee acted in good faith.

This court having, at a former term, made a decree for specific performance of a contract of purchase (see [Case No. 13,159]), the case now came on for further directions upon the question whether the purchaser should be compelled to pay interest on the purchase-money. The parties agreed on the following statement of facts.

It is argued that the sale mentioned in the bill, took place at the time and on the conditions mentioned in said bill, namely, the 28th day of August, A. D. 1852, and as set forth in Exhibit B. to the bill, found on pages 19 and 20 of the printed record; that the deposit of ten per cent. on the amount of the purchase-money provided for in the conditions of sale contained in said Exhibit B., was paid down by the respondent, and at the expiration of twenty days, according to said conditions of sale, the deed mentioned in the bill, and a copy of which is found on pages 20, 21, and 22, of the printed record, was tendered to the respondent, and by him refused under the advice of counsel, on the ground that the title offered to him by said deed was not a good title, because said deed was not executed by a majority of the children of the said Mary Gibbs, living at the time of her death, but by a majority only of the children of said Mary, living at the time of said sale; that on the 14th of January, 1853, the respondent received back, with the consent of said William D. Sohier, from the auctioneer who made the sale, the deposit so before paid by him, and gave to said auctioneer the following receipt, namely:—"Newport, January 14, 1854. Received of Samuel A. Parker, auctioneer, the sum of five hundred and seventy-eight dollars, which I deposited with him in compliance with the conditions of sale, under which I bid off certain portions of 'The Old Mill Lot,' at auction, in August last; said sum is restored to me at my request, and for my accommodation, to prevent the loss of interest, whilst the question respecting the title to the land sold is undecided, and my accountability for the whole purchase-money and interest shall not be varied by the return of the deposit-money to me, in case I should have taken the conveyance. (Signed,) John D. Williams." That the said John D. Williams never took possession of the premises to him sold, which is a portion of a vacant lot in the city of Newport, used for pasturage only, and that the said lot, including the precincts sold, was let by the said William D. Sohier, trustee, during all the time between the said sale and the present time to different persons, as tenants at will, at the rate of thirty dollars per annum. which said rent has been received by said William D. Sohier, trustee; but the said rent was only forty

cents more than sufficient to pay the taxes upon the whole of said mill lot, leaving but the sum last named to be applied to the necessary repairs of the fence about said lot; and that in the mean time the said lot, including the premises sold, has appreciated in value in a sum greatly exceeding the interest on the purchase-money; the said John D. Williams having since, by contract, sold to the city of Newport the said lots of land mention in said bill by him purchased, for a public park, at an advance on the price he paid therefor of five cents per square foot.

The conditions of sale were as follows: "The above sale will take place by order of William D. Sohier, Esq., trustee under the will of Mrs. Mary Gibbs, deceased, and will be conveyed to the purchasers by Mr. Sohier, in his said capacity of trustee, and twenty days will be allowed each purchaser to examine the title to the premises sold. Conditions of payment, ten per cent. of the purchase-money to be paid to the auctioneer on the day of sale; twenty-three and one third per cent. additional on the balance of the money on the delivery of the deed; or, if desired, two thirds of the purchase-money may remain on a credit of five years, secured by note and mortgage on the property sold, the note to bear six per cent. per annum, and the interest to be paid annually."

Mr. Ames, for complainant.
Mr. Jenckes, contra.

CURTIS, Circuit Justice. In adjusting the respective rights of the vendor and vendee under a decree for a specific performance of a contract for the sale of land, equity generally considers what would have been the condition of the parties if the contract had been actually performed according to its terms, and endeavors to place them as nearly as possible in that condition. But if only one of the parties has been in default, and it is not practicable to render to both, what each would have had by performance on the day, the party in default must lose rather than the other. Applying these principles to the subject of interest on purchase-money, it has been uniformly held, that if the contract fixed a day for the payment of the money and the conveyance of the land, and the vendor was ready and offered to perform, and the vendee refused to perform, the vendee must pay interest. In such a case it is due, not only by force of the contract, and as compensation for not paying the money on the day fixed, (Robinson v. Bland, 2 Burrows, 1086,) but also because, as the vendee is in default, if the court cannot give to each party all the benefits he would have enjoyed by the execution of the contract, the vendee, being in default, should alone be the loser. Where, as in the case at bar, the land is unproductive, the rents and profits during the delay, are not all the purchaser would have had if the title had been passed to him, nor are they a compensation for the interest.

The land having been purchased for sale, or for building lots, the chances of a favorable sale, or the opportunity to improve them by buildings, are the advantages contemplated by the purchaser, in lieu of the purchase-money. These, he does not enjoy during the delay, and they cannot be restored to him. In this case, in point of fact, these may not be important; for perhaps the purchaser would not have sold, or built on the lands, if he had had the title. But whether small or great, the loss in his. if he is in default, and the fact that he must bear it, is no reason why the vendor should not be compensated for not receiving his money, on the day when it was the duty of the plaintiff to pay it.

To apply these principles; this contract fixed a day for the payment of the money and delivery of the deed. The complainant tendered the same deed, which the court by its decree, has required the defendant to receive. The defendant then refused to accept it. It is urged, that there was a doubtful question of law involved in the title which the plaintiff offered to make. This, in my apprehension, is true; but I do not think I can say that the existence of a question, doubtful in my apprehension, amounts to any default on the part of the plaintiff, or relieves the refusal of the defendant to receive the deed, from the character of a default on his part. It is true, that where such a question exists, it is not only consistent with good faith, but is required by reasonable prudence, to have the question settled; but when it is settled against the purchaser, he must take the consequences of having broken his contract. This affords a practical rule, and the only one, it seems to me, which can be laid down. For how doubtful, in point of law, must a title be, to relieve the purchaser from paying interest; and in whose apprehension must the doubt exist. Is it enough that the purchaser has acted in good faith, upon the advice of counsel? If not, then after all, he takes the risk of satisfying the court of something; and I think it better to say, at once, he must satisfy the court the complainant's title is one which he ought not to be compelled to take. If he fails in this, he has been in the wrong, and should make compensation for the injury done to the vendor, by withholding the purchase-money; that wrong is none the less real, because his intentions were fair. Any other rule would refer the whole matter to the discretion of the court, and to its apprehension of the degree of doubt which in each case should relieve the purchaser from paying interest. I prefer a known and fixed rule, which is not inequitable, to such exercise of discretion. It is, no doubt true, that whilst a material objection to the title remains to be cleared up, the purchaser may refuse to go into possession, and he will not be charged with interest on the purchase-money. 2 Sugd. Vend. 797. But I understand this to be some actual objection, not merely a doubtful point of law. Mr. Sugden refers only to Horniblow v. Shirley, 13

Ves. 81, 2 Swanst. 223, which was a case of actual incumbrance on a part of the land. In the case at bar, the defendant has profited by the breach of his contract; for he has had the use of the purchase-money, a circumstance which, in many cases, has a controlling weight. 2 Sugd. Vend. 794. And though I do not consider that the appreciation in value of the land, any more than its depreciation, could change the rights of the parties, yet it is satisfactory to know that the defendant has, in fact, gained largely by the delay.

On the whole, my conclusion is, that the defendant must be required to pay interest from the expiration of twenty days after the sale.